**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LIHUA YE,**<br><br>Plaintiff,<br><br>v.<br><br>**SCHEDULE A DEFENDANTS,**<br><br>Defendants. | Civil Action No.: 26-cv-2113<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff Lihua Ye ("Plaintiff") hereby sues the Schedule A Defendants hereto ("Defendants"), alleging as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat the e-commerce stores who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, mainly including molds, that infringe Plaintiff's United States Design Patent No. D1,097,729 and, as to certain Defendants, use infringing and/or derivative copies of Plaintiff's federally registered copyright VA 2-509-491 (the "Infringing Products"). Defendants operate on the same marketplace platform - Walmart, creating e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and/or selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their infringing operation.

2. Plaintiff is forced to file this action to combat Defendants' infringement of her federally registered patent and copyright, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged. This damage includes loss of market share, loss of future sales, inability to realize a return on investment, price erosion, diminished goodwill and brand confidence, damage to Plaintiff's reputation, and loss of exclusivity in her valuable patent and copyright rights. Plaintiff seeks injunctive and monetary relief.

**PARTIES**

4. Plaintiff is an independent product designer and entrepreneur based in Guangzhou, China. Plaintiff designs and sells kitchen baking tools. She distributes her products to multiple countries worldwide, including through Amazon marketplaces in the United States, Canada, the United Kingdom, and various European marketplaces, and through an independently operated brand website.

5. Since 2019, Plaintiff has focused on the innovative design and commercial operation of kitchen baking tools. Drawing from her personal design philosophy and hands-on experience, she has launched a series of original products distinguished by creative concepts and practicality. Plaintiff has built an integrated operational system spanning research and development, manufacturing, and cross-border sales.

6. Plaintiff's work is guided by the principle of "making baking simpler, more enjoyable, and filled with love," and she is committed to providing high-quality baking solutions to consumers worldwide. Plaintiff's self-designed products span cake molds, bread trays, chocolate molds, piping tools, ice cube trays, kitchen storage solutions, and more. Every product is designed based

on genuine market demand, balancing practicality with aesthetics to meet the needs of users ranging from beginners to professionals.

7. Plaintiff's mission is to help families enjoy the pleasure of baking with ease through the design and provision of high-quality baking tools, creating warm and lasting memories. Plaintiff's vision is to become a leading innovator in baking tool design, continuously delivering safe, reliable, and creative products to the global market.

8. Plaintiff is the author and sole owner of United States copyright Reg. No. VA 2-509-491 (hereinafter "Plaintiff's Copyright" or "Copyright-in-Suit"). A true and correct copy of Plaintiff's Copyright registration is attached as Exhibit B.

9. Plaintiff's Copyright is a registration for a group of ten (10) published photographs titled "Multiple-use Mold." The photographs were first published in the United States on June 27, 2024. *See* Exhibit B.

10. Plaintiff's Copyright encompasses original photographs depicting Plaintiff's 3D silicone mold product in 1-cavity, 4-cavity, 6-cavity, 8-cavity, and 9-cavity configurations and in orange, pink, and grey colorways. These photographs are used to market, depict, promote, and/or otherwise sell Plaintiff's product. *See* Exhibit B.

11. Plaintiff is also the inventor, applicant, and owner of United States Design Patent No. D1,097,729 (hereinafter "Plaintiff's Patent" or "Patent-in-Suit"). A true and correct copy of the Patent-in-Suit is attached as Exhibit A.

12. The Patent-in-Suit claims the ornamental design for a multiple-use mold, as shown and described. *See* Exhibit A.

13. In March 2024, Plaintiff completed the design of a silicone mold embodied in the Patent-in-Suit. The product officially launched for sale on Amazon US in June 2024, under ASIN

B0D87F9LFL. Following market validation, Plaintiff filed design patent applications in the United States and the European Union around January 12, 2025. The U.S. design patent has since been granted as the Patent-in-Suit. *See* Exhibit A.

14. Plaintiff's Patent, Plaintiff's Copyright, and the products protected by the Patent-in-Suit were developed through substantial investment. Before launch, the products protected by the Patent-in-Suit went through multiple stages: market research, product design, graphic design, mold development, and product testing. Each stage required corresponding investments of labor and capital, and the cumulative investment reached the tens of thousands of U.S. dollars.

15. Plaintiff has devoted substantial time, effort, and resources to the creation, design, commercialization, and protection of her products, including the products protected by the Patent-in-Suit and depicted in Plaintiff's Copyright.

16. Plaintiff has made significant financial investments in the development, protection, and promotion of Plaintiff's Patent, Plaintiff's Copyright, and the related products. These investments include, but are not limited to, product design, graphic design, mold development, product testing, design patent applications in the United States and the European Union, copyright registration, and overseas advertising.

17. Plaintiff places great emphasis on intellectual property protection and has established a comprehensive intellectual property protection system. Plaintiff's core products are protected through both U.S. design patents and copyright registrations, forming a multi-layered intellectual property protection network. Multiple core products have completed both design patent applications and copyright registrations in parallel, including the products protected by the Patent-in-Suit and depicted in the Copyright-in-Suit.

18. Plaintiff's products serve a global customer base of home baking enthusiasts, offline professional bakeries, and bulk commercial buyers, while also catering to the holiday gift market. Plaintiff's products are well suited to a wide range of use cases, with particularly strong seasonal sales during Halloween and other themed party occasions.

19. Plaintiff's core sales channels include Amazon US, Canada, UK, and various European marketplaces, supplemented by an independently operated brand website, with the U.S. market serving as Plaintiff's core revenue region. Products protected by the Patent-in-Suit are sold on Amazon US.

20. Plaintiff places significant emphasis on long-term brand development, making sustained, long-term investments in new product development, brand promotion, overseas advertising, and product iteration. Plaintiff also places high priority on intellectual property strategy and enforcement.

21. Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Patent, Plaintiff's Copyright, and products thereof. Over time, Plaintiff has invested heavily in Plaintiff's Patent, Plaintiff's Copyright, and the respective products.

22. The above U.S. registrations for the Patent-in-Suit and the Copyright-in-Suit are valid, subsisting, and in full force and effect. *See* Exhibits A–B.

23. Since their launch, the products protected by the Patent-in-Suit have rapidly gained market traction on the strength of their original design. Plaintiff's Patent, Plaintiff's Copyright, and the related products have attracted substantial market attention, which appears to have led Defendants to imitate Plaintiff's Patent and copy Plaintiff's Copyright.

24. The products protected by the Patent-in-Suit have achieved strong commercial success. Their performance during the 2024 Halloween season was strong, and by the same period in 2025, sales had achieved year-over-year growth, reflecting increasing market acceptance and brand recognition.

25. Since launch, Plaintiff's business involving products protected by the Patent-in-Suit has experienced sustained growth, indicating strong market recognition and ongoing brand cultivation.

26. Numerous low-price infringing products copying Plaintiff's patented design began appearing across major cross-border e-commerce platforms. Plaintiff became aware of Defendants, who also began offering to sell and selling products that embody the Patent-in-Suit. Defendant Nos. 1, 2, and 4 (the "Copyright Defendants") also use copies of the Copyright-in-Suit. Plaintiff therefore filed this action to combat the Seller Aliases listed on Schedule A. These Seller Aliases are harming Plaintiff by offering to sell, selling, advertising, and/or shipping unlicensed products that infringe the Patent-in-Suit and/or utilize the Copyright-in-Suit.

27. The influx of infringing products copying Plaintiff's patented design, and of infringing copies of Plaintiff's Copyright, has diverted Plaintiff's target customers. It has squeezed the market share and profit margins of products protected by the Patent-in-Suit, and infringing sellers have substantially captured legitimate revenue that rightfully belongs to Plaintiff. After a strong first Halloween season and a full year of brand accumulation and overseas traffic growth, sales of products protected by the Patent-in-Suit should have continued their strong growth momentum during the subsequent periods. Instead, sales growth during that period fell notably short of the reasonable expectations formed from Plaintiff's historical trends and market investment.

28. As a direct result of the sustained impact of infringing products, including Defendants' Infringing Products, Plaintiff has suffered and continues to suffer significant losses. These losses

include, but are not limited to: (a) customer attrition and lost revenue and profits from sales diverted to lower-priced infringing products; (b) rising customer acquisition costs; (c) increased logistics costs; (d) compressed per-unit profit margins; (e) substantial and ongoing damage to the reputation, market trust, and goodwill associated with Plaintiff's Patent, Plaintiff's Copyright, and the related products, because low-quality infringing products degrade the overseas consumer experience; and (f) considerable costs in enforcing Plaintiff's intellectual property rights, including sustained investments of manpower and capital in platform complaints, legal coordination, and related enforcement efforts.

29. This infringing behavior by Defendants severely impacts Plaintiff's patent and copyright rights and undermines the fair competition environment in the market. The race-to-the-bottom pricing driven by infringing sellers has triggered industry-wide price competition, compressing Plaintiff's profit margins and constraining her ability to sustain investment in new product development and overseas market expansion. The infringement continues to spread and has not been effectively contained. The Halloween season, the peak sales period for products protected by the Patent-in-Suit, is approaching, and without prompt relief Plaintiff's losses will escalate over time, causing continued harm to her long-term market position.

30. The infringing behavior of these Seller Aliases has diminished Plaintiff's patent and copyright rights and resulted in loss of exclusivity and control over Plaintiff's patented design and creative content. Plaintiff has not been able to realize the return on her investment in the Patent-in-Suit, the Copyright-in-Suit, and the respective products.

31. Plaintiff has lost control over the rights in Plaintiff's Patent and Plaintiff's Copyright. She has lost Plaintiff's and Plaintiff's products' reputation, the goodwill associated with Plaintiff's

Patent and Plaintiff's Copyright, and the ability to exploit the protected design and works. Plaintiff has also lost profit, market share, and sales volume.

32. Defendants leverage platform traffic and offer Infringing Products at low prices. In doing so, they divert consumers, appropriate the goodwill associated with Plaintiff's products, and capture traffic associated with Plaintiff's products. This causes Plaintiff to lose significant market share and incur additional costs to compete with the resulting price erosion.

33. Plaintiff has not entered a contract or licensing agreement with Defendants for the Patent-in-Suit or the Copyright-in-Suit. Defendants are not authorized sellers of products embodying Plaintiff's Patent or otherwise using Plaintiff's Copyright.

34. Defendants are partnerships, individuals, and/or unincorporated associations operating as seemingly fictitious seller aliases on the Walmart platform who target sales to Pennsylvania residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). *See* Exhibit C.

35. Defendants target Pennsylvania consumers by advertising, offering to sell, and standing ready, willing and able to sell and ship, and upon information and belief, do sell and ship, Infringing Products to the United States, including Pennsylvania, utilizing infringing designs and, as to the Copyright Defendants, infringing and/or derivative copies of Plaintiff's Copyright. *See* Exhibit C.

36. Based on the seller alias names and research of Defendants, Defendants likely reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. As a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). *See* Exhibit D.

37. A search of Defendants' purported addresses (if any) via Google does not return the same alias names nor purported business names, respectively. *See* Exhibit D.

38. Defendants' interactive sites are in English, accept U.S. Dollars, and affirmatively accept Pennsylvania as a sale and shipping destination. *See* Exhibit C.

39. Defendants operate one or more e-commerce stores under seller aliases listed in Schedule A. Through seller aliases and the anonymity allowed by the marketplace platform, Defendants purposely conceal their true identity or location and the full scope of their operations. *See* Exhibit D.

40. Defendants have the opportunity to operate under a proper individual, partnership, or entity name, but Defendants willfully choose to operate under seller aliases.

**DEFENDANTS' INFRINGING CONDUCT**

41. While the seller aliases (or Defendants) alone may appear as some small-time infringers, the actions of Defendants are of enormous detriment and coordinated.

42. The infringement empire Defendants participate in and take advantage of is a $500+ *Billion* Dollar industry. The U.S. Department of Homeland Security recognizes this serious threat posed by Defendants, detailing the expansive nature as seen below (*See* Exhibit F):



43. Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Exhibit E, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

44. "[A]t least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Exhibit F, Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id*.

45. Based on the limited information available and Google research, Defendants appeared to engage in fraudulent conduct when registering the seller aliases by providing false, misleading and/or incomplete information to e-commerce platform(s) to prevent discovery of their true identity, location, and/or the scope of their e-commerce operations. *See generally* Exhibit D.

46. Defendants have the ability to quickly and easily change e-commerce store data, including but not limited to titles, descriptions, images, videos, Date First Available, and other product description information.

47. Defendants offer to sell and/or sell products that embody the ornamental design claimed in the Patent-in-Suit. The Copyright Defendants also incorporate and use infringing and/or derivative copies of Plaintiff's Copyright on at least their respective product pages. *See* Exhibit C.

48. The e-commerce stores operating under the seller aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of products protected by the Patent-in-Suit and depicted in Plaintiff's Copyright.

49. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies as Plaintiff. For example, Defendants facilitate sales by designing the e-commerce store(s) operating under the seller aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers of authorized products protected by the Patent-in-Suit and depicted in Plaintiff's Copyright. *See* Exhibit C.

50. Defendants appear to use fictitious name(s) to keep selling despite Plaintiff's actions.

51. Defendants have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment. In fact, financial records from similar Schedule A cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis, and upon notice of a lawsuit, to avoid paying any judgment ordered by a court of law in the United States.

52. Joinder of Defendants is proper under Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299(a). Defendants' illicit actions arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and/or selling of the same accused product, and questions of fact common to all Defendants will arise in this action. Alternatively, joinder is proper because Plaintiff asserts a right to relief against Defendants jointly or severally.

53. Defendants all offer to sell and/or sell the same or substantially the same Infringing Products, which copy the ornamental design claimed in the Patent-in-Suit. The Copyright Defendants also use the same or substantially the same infringing and/or derivative copies of

Plaintiff's Copyright, directing consumers to the same or substantially similar Infringing Products. This establishes a logical relationship. *See* Exhibit C.

54. Defendants are involved in, review, and/or are in communication with one another via WeChat or QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings and aliases - further establishing a logical relationship amongst Defendants.

55. Defendants' Infringing Products appear identical or substantially similar and manufactured by and come from common source(s) - further establishing a logical relationship amongst Defendants.

56. Defendants, in a virtually identical manner, attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing seller aliases and providing no further, credible identifying information - further establishing a logical relationship amongst Defendants. *See* Exhibit D.

57. Defendants, in a virtually identical manner, utilize the same channel of trade (Walmart), in the same time period, with the same or substantially the same Infringing Products, where Copyright Defendants also use the same or substantially the same infringing and/or derivative copies of Plaintiff's Copyright - further establishing a logical relationship amongst Defendants. *See* Exhibits C–D.

58. Defendants' Infringing Product listings, including images, titles, and/or descriptions, appear substantially similar - further establishing a logical relationship amongst Defendants. *See* Exhibit C.

59. Defendants take advantage of a set of circumstances - the anonymity and mass reach the internet affords - to sell Infringing Products, all from across international borders, while their listings are in English and accept USD - further establishing a logical relationship amongst Defendants.

60. Defendants understand that their ability to profit through fictitious internet stores is enhanced as the number of aliases increase, even though each alias may not all engage in direct communication or coordination - further establishing a logical relationship amongst Defendants.

61. Questions of fact common to all Defendants will inherently arise for two reasons. First, Defendants' relatedness and/or logical relationship, identical anonymous nature, and foreign status require the same methods to investigate, uncover, and collect evidence about the infringing activity. Second, Defendants offer the same or substantially the same Infringing Products and, as to the Copyright Defendants, make the same or substantially the same infringing and/or derivative use of Plaintiff's Copyright, requiring the same legal and factual infringement analysis and damage consideration. *See* Exhibits C–D.

62. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill and reputation associated with Plaintiff's Patent, Plaintiff's Copyright, and the related products, and the destruction of the legitimate market sector in which they operate.

63. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results, and reducing the visibility of Plaintiff's genuine goods and creative works; (ii) causing an overall degradation of the value associated with Plaintiff's Patent, Plaintiff's Copyright, and the respective products; and (iii) increasing Plaintiff's overall cost to

market and educate consumers about her products protected by the Patent-in-Suit and depicted in Plaintiff's Copyright.

64. Defendants' use of Plaintiff's patented design and, as to the Copyright Defendants, Plaintiff's Copyright, in connection with the advertising, distribution, offering for sale, and/or sale of Infringing Products, including the sale of Infringing Products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

65. Defendants' infringement of Plaintiff's Patent and infringing and/or derivative use of Plaintiff's Copyright have caused financial loss to Plaintiff.

66. Defendants will continue to advertise, distribute, sell, and/or offer for sale Infringing Products unless preliminarily and permanently enjoined.

**JURISDICTION AND VENUE**

67. This is an action for infringement of the Patent-in-Suit arising under 35 U.S.C. §§ 271(a), 281, 283–85, and 289, and for infringement of the Copyright-in-Suit arising under 17 U.S.C. § 501.

68. This Court has original subject matter jurisdiction over the claims in this action arising under 28 U.S.C. §§ 1331 and 1338(a), as the claims arise under the Patent Act and the Copyright Act.

69. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Pennsylvania, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants advertise, display, offer to sell, and stand ready, willing and able to, and upon information and belief, do sell and ship Infringing Products to residents within the Western District of Pennsylvania. *See* Exhibit C. When setting up their

online marketplaces, each Defendant affirmatively chose the United States, including Pennsylvania, as a destination to sell and ship Infringing Products. As a result, Defendants have purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their patent and/or copyright infringement activities at the state through their own affirmative actions; Plaintiff's injuries stem from the Defendants' forum-related activities of advertising, offering to sell, selling, and/or shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

70. Pennsylvania also authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons. Stat. § 5322 (a). Defendants are systematically directing or targeting their business activities at consumers in the United States, including Pennsylvania, through the Internet platform under the Seller Aliases, affirmatively choosing to offer for sale, sell, and/or ship Infringing Products in and to Pennsylvania, where consumers in the United States, including Pennsylvania, can and likely do view Defendants' Infringing Products listings, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Pennsylvania. *See* Exhibit C. Despite being from a foreign nation, Defendants' e-commerce stores are made to confuse consumers that they and/or their products originate in the United States, and the stores are in English and accept USD. *See* Exhibit C. The level of interactivity is high, where consumers of Pennsylvania can: communicate to Defendants about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their respective Pennsylvania addresses. Defendants, through anonymous Seller Aliases, utilize an online platform for the sole purpose of conducting business transactions, as described above. The Internet

webpages owned and operated by Defendants, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Pennsylvania.

71. Alternatively, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendants' Infringing Product listings and based on the Seller Aliases being of foreign origin, Defendants are foreign entities, individuals, or unincorporated associations not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

72. Venue in the Western District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District – as described above, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, advertising, and/or shipping the Infringing Products to this District.

73. Based on information found on Defendants' Infringing Product listings and based on the Seller Aliases themselves, Defendants are foreign entities or individuals, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). Venue is therefore proper in this District as to all claims, including Plaintiff's claim for patent infringement. *See* Exhibit D.

74. Further, venue is proper in this District as to Plaintiff's copyright claims under 28 U.S.C. § 1400(a), because Defendants are subject to the Court's personal jurisdiction and therefore reside or may be found in this District.

**COUNT I**
**INFRINGEMENT OF PLAINTIFF'S PATENT-IN-SUIT**

75. Plaintiff hereby re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

76. Plaintiff is the true and correct owner of the Patent-in-Suit. *See* Exhibit A.

77. Defendants, directly or through intermediaries, offer to sell, sell, and/or ship products which infringe the Patent-in-Suit. *See* Exhibit C.

78. Defendants are making, using, offering for sale, selling, and/or importing into the United States, including Pennsylvania, for subsequent sale or use, Infringing Products that directly and/or indirectly infringe the Patent-in-Suit. *See* Exhibit C.

79. The design of Defendants' Infringing Products is substantially the same as the ornamental design claimed in the Patent-in-Suit. An ordinary observer, giving such attention as a purchaser usually gives, would be deceived into believing that the Infringing Products are the same as the patented design. *See* Exhibit C.

80. Defendants have infringed and/or are actively infringing the claim of the Patent-in-Suit in the Commonwealth of Pennsylvania, in this judicial district, and in other jurisdictions in the United States by selling and/or offering to sell Infringing Products.

81. Defendants' offering for sale, sale, and/or shipment of Infringing Products has caused and will continue to cause Plaintiff irreparable harm. That harm includes loss of Plaintiff's exclusive patent rights, loss of market share, price erosion, loss of future profits, loss of reputation, and inability to realize a return on investment.

82. Upon information and belief, Defendants' offering for sale, sale, and/or shipment of Infringing Products into the United States, including Pennsylvania, was willful in nature. This is based upon Defendants' actual or constructive knowledge of the Patent-in-Suit, the popularity of Plaintiff's products protected by the Patent-in-Suit, the substantially identical nature of the Infringing Products, and/or the anonymous nature of Defendants.

83. Upon information and belief, Defendants had actual or constructive knowledge of Plaintiff and/or the Patent-in-Suit before and/or during Defendants' advertising, offering for sale, and/or sale of Infringing Products.

**COUNT II**
**INFRINGEMENT OF PLAINTIFF'S COPYRIGHT**

84. Plaintiff hereby re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

85. Plaintiff is the true and correct owner of Plaintiff's Copyright. *See* Exhibit B.

86. Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyright.

87. Plaintiff's Copyright is an original work.

88. Under 17 U.S.C. § 106, Plaintiff has the exclusive rights and privileges to reproduce, prepare derivative works, distribute copies, and publicly display Plaintiff's Copyright.

89. The Copyright Defendants infringed Plaintiff's exclusive copyright in violation of 17 U.S.C. § 501, as seen in Exhibit C. They did so by creating infringing and/or derivative works and by copying, displaying, advertising, and/or distributing works to the public utilizing or based upon Plaintiff's Copyright.

90. The Copyright Defendants' Infringing Product listing pages incorporate and copy Plaintiff's Copyright.

91. The Copyright Defendants' copying constitutes improper appropriation of Plaintiff's Copyright.

92. The Copyright Defendants' Infringing Product listing pages and/or Infringing Product packaging are unlawful copies and/or derivatives of Plaintiff's Copyright.

93. The Copyright Defendants had access to Plaintiff's Copyright. The photographs comprising Plaintiff's Copyright were first published in the United States on June 27, 2024. *See* Exhibit B. Plaintiff's products depicted in Plaintiff's Copyright have been publicly available for purchase in the United States through Amazon US since around June 27, 2024, making Plaintiff's Copyright readily accessible to any party engaged in the online silicone mold market. Further, the images on the Copyright Defendants' listings are so substantially similar to Plaintiff's Copyright that they could not have been created without prior access to Plaintiff's Copyright. *See* Exhibit C.

94. Due to the Copyright Defendants' infringing behavior as alleged herein, the Copyright Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Copyright.

95. The Copyright Defendants have been and are now actively infringing the Copyright-in-Suit in the Commonwealth of Pennsylvania, in this judicial district, and other jurisdictions in the United States by displaying, advertising, selling, and/or offering to sell products utilizing and/or under derivative and/or infringing copies of the Copyright-in-Suit.

96. Upon information and belief, the Copyright Defendants' conduct constitutes willful and direct copyright infringement. The substantially identical nature between Plaintiff's Copyright and infringing products and/or images used in advertising or displaying or packaging the products

sold by the Copyright Defendants further evidences the willful and direct infringement by the Copyright Defendants. The use of seller aliases with incomplete and/or false information further evidences the willful nature of the infringement.

97. Due to the Copyright Defendants' acts of infringement, Plaintiff has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504.

98. The harm caused to Plaintiff is irreparable.

99. Upon information and belief, the Copyright Defendants had actual or constructive knowledge of Plaintiff and/or Plaintiff's Copyright before and/or during the Copyright Defendants' advertising, offering for sale, and/or sale of Infringing Products.

**COUNT III**
**VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

100. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

101. Upon information and belief, the Copyright Defendants knowingly induced, participated in, aided and abetted, and profited from the illegal reproduction and distribution of Plaintiff's Copyright. Such conduct included, without limitation, creating derivative works and/or advertising, offering for sale, and/or selling products using such infringing and/or derivative works, which the Copyright Defendants knew, or should have known, they were not authorized to publish.

102. Upon information and belief, the Copyright Defendants are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and a direct financial interest in it. Specifically, the Copyright Defendants profited in connection with the Infringing Products and the advertising of infringing and/or derivative copies

of Plaintiff's Copyright, and were able to supervise the distribution and publication of the Infringing Product listings.

103. By reason of the Copyright Defendants' acts of contributory and vicarious infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

104. Due to the Copyright Defendants' acts of copyright infringement as alleged herein, the Copyright Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in Plaintiff's Copyright.

105. Upon information and belief, the Copyright Defendants' acts of copyright infringement, as alleged above, were willful or intentional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against each Defendant as follows:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 35 U.S.C. § 283, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65. The injunctions would enjoin Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling, or offering to sell Infringing Products and/or Plaintiff's Copyright.

b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplace Walmart, identify any e-mail address(es) known to be associated with Defendants' respective Seller IDs and Seller Aliases, and cease facilitating access to any or all e-

commerce stores through which Defendants engage in the promotion, advertising, offering for sale, and/or sale of Infringing Products and/or Plaintiff's Copyright.

c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplace Walmart, permanently remove any and all listings offering for sale or advertising Infringing Products and/or Plaintiff's Copyright via the e-commerce stores operating under the Seller IDs and Seller Aliases, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, advertise, display, offer for sale and/or sell Infringing Products and/or Plaintiff's Copyright.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplace Walmart, immediately cease fulfillment of and sequester all goods of Defendants or other Seller under such Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order awarding Plaintiff damages adequate to compensate for the infringement of the Patent-in-Suit, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284, with the award trebled as provided for under 35 U.S.C. § 284. Alternatively, at Plaintiff's election, entry of an Order awarding Plaintiff all profits realized by Defendants from their infringement of the Patent-in-Suit, pursuant to 35 U.S.C. § 289.

f. Entry of an Order requiring the Copyright Defendants to account to and pay Plaintiff actual damages and/or the Copyright Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504.

g. Entry of an Order finding that this case is exceptional and awarding Plaintiff her attorney fees and costs as provided under 35 U.S.C. § 285 and 17 U.S.C. § 505.

h. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

i. Entry of an award of pre- and post-judgment interest on the judgment amount.

j. Entry of an order for any further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED September 25, 2026

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei

Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. IL 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*